IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Earnest E. Vaughn, Sr., | ) | |
| | ) | Civil Action No. 8:07-1288-TLW-BHH |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Officer Dale Logan, and | ) | |
| the City of Anderson, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The plaintiff, proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the Court on the defendants' motion for summary judgment (Docket Entry # 24) and the plaintiff's motion to amend (Docket Entry # 28).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff brought this action on May 4, 2007, seeking damages for alleged civil rights violations. On August 2, 2007, the defendants filed a motion for summary judgment. On August 3, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motions. The plaintiff filed an

affidavit in opposition to the defendant's summary judgment motion on August 20, 2007.

## FACTS PRESENTED

The plaintiff is a pre-trial detainee at Greenwood County Detention Center ("GCDC"). He is currently being detained on charges unrelated to this case. The plaintiff alleges he was falsely arrested by defendant Officer Logan on two occasions - September 4, 2005, and October 3, 2005.

On September 4, 2005, at approximately 4:30 a.m., the plaintiff states he was in the parking lot of the BreakTimes Lounge. (Pl.'s Aff. at 1.)[1] Contrary to the defendant's affidavit, the plaintiff states there was not any altercation, there were not numerous people in the parking lot, and he did not hear any squealing tires. (*Id*. at 1-2.) He states that as he was leaving the parking lot with a friend who had a cup of cola, the police entered the parking lot. (*Id*.) He denies hearing any squealing tires. (*Id*. at 2.) He states that the police were concerned that there was alcohol in his friend's cup which would be an open container violation. (*Id.*) He states that after the police determined that the cup did not have alcohol in it, they told them they could leave. He states he was never asked for his driver's license and his tag was not called into dispatch. (*Id*.)

The plaintiff states that the police followed him for 1 1/4 miles and then pulled him over. (Pl.'s Aff. at 3.)[2] He states the defendant conducted a license test and checked the

---

[1] The time is taken from the incident report. (Def.'s Mem. Supp. Summ. J. Mot. Ex. A-Logan's Aff. Attach. 1.)

[2] The court notes that in his motion to amend his complaint (Docket Entry # 17), the plaintiff states he was stopped ½ mile down the road.

tags on the vehicle.  (*Id.*)  He alleges he was "never undetained from the initial detention" and "[o]nce the investigation concerning the cup was over, the 4th Amendment says, [he was] were supposed to be able to leave without any further police interference."  (*Id.*)

Officer Logan's account of this encounter differs slightly. (Def.'s Mem. Supp. Summ. J. Mot. Ex. A - Logan's Aff.)  He alleges that while on patrol in Anderson, he heard tires spinning in the parking lot at BreakTime.  (*Id.* ¶ 2.)  He states that he pulled into the club parking lot and observed a number of people and cars in the lot.  (*Id.*)  Officer Logan states that an employee of the club had told him that there had been an altercation and he was having trouble getting people to leave.  (*Id.*)  Officer Logan stated he again heard squealing tires and saw a Jeep coming from the direction of the squealing tires.  (*Id.*)  Officer Logan stated he stopped the Jeep to see if the occupants had been involved in the altercation since they appeared to be leaving quickly through a crowded parking lot.  (Def.'s Mem. Supp. Summ. J. Mot. Ex. A - Logan's Aff ¶ 2.)

Officer Logan stated he had noticed the open container and determined it contained only cola.  (*Id.*)  He states that he asked them about the spinning tires and the plaintiff and passenger told Officer Logan that another vehicle was the one causing the squealing and it had just left.  (*Id.*)  Officer Logan stated he then let the plaintiff and his passenger go.  (*Id.*)  As he getting back into his car, Officer Logan stated he was advised by dispatch that the tag on the Jeep was registered to a different vehicle.  (Def.'s Mem. Supp. Summ. J. Mot. Ex. A - Logan's Aff ¶ 2.)  Therefore, Officer Logan initiated a second stop of the Jeep.  (*Id.*)  Neither the plaintiff nor his passenger could produce proof of ownership or insurance to the

vehicle. (*Id*.) Officer Logan then issued the plaintiff a citation for no proof of insurance and ownership and improper vehicle license. The car was towed and the plaintiff and his passenger were picked up by someone else. (*Id.*)

On October 3, 2005, the plaintiff alleges that he was pumping gas at a gas station when he saw a man pumping gas who appeared to be drunk. (Pl.'s Mem. Opp. Summ. J. Mot. - Pl.'s Aff. at 3.) He stated he began talking to the man and saw a police car enter the parking lot. (*Id.*) He states the drunk man did not want to drive and he offered to let his girlfriend drive the man's truck and let the man ride with him. (*Id*. at 3-4.) As he pulled away from the pumps, he states the man told him he did not have a driver's license. (Pl.'s Mem. Opp. Summ. J. Mot. - Pl.'s Aff. at 4.) The plaintiff states the defendant motioned for him to go into the roadway ahead of him but because he had only a beginner's permit and his passenger did not have a driver's license, he declined to pull in front of the police car made a u-turn, and parked the car. (*Id.*)[3] He states the defendant then pulled in behind him. (*Id.*)

Again, Officer Logan's version of this encounter also differs from the plaintiff's version. In his affidavit, Officer Logan states that he was sitting in his patrol car in a parking lot beside a convenience store talking to Officer Keith Parks who was in another patrol car. As they were leaving the parking lot, both officers noticed a vehicle with a broken tail light. (Def.'s Mem. Supp. Summ. J. Mot. Ex. A - Logan Aff. ¶ 3.) Officer Parks initiated a traffic stop and Officer Logan pulled in behind him. (*Id.* at ¶ 4.) The officers approached the

---

[3]The court finds it curious that the plaintiff had a driver's license in September, but a beginner's permit a month later.

vehicle and Officer Logan asked the driver, the plaintiff, for his driver's license, proof of insurance, and vehicle registration. (*Id.*) The plaintiff had only a South Carolina beginner's permit and the passenger, David Nimmons, stated his license was under suspension. (*Id.*) Officer Logan then saw an open bottle of tequila on the passenger side rear floor board of the vehicle. (*Id.*) The officers then had the plaintiff and Nimmons exit the vehicle. (Def.'s Mem. Supp. Summ. J. Mot. Ex. A - Logan's Aff. ¶ 4.) Once outside the vehicle, both were patted down for any weapons. (*Id*.) During this check for weapons, a glass pipe commonly used for smoking narcotics was found in the plaintiff's left front pants pocket. (*Id.*) The officers conducted a search of the car and found a cigarette pack stuffed next to the driver's side seat containing what appeared to be a marijuana joint and seven clear plastic bags containing a crystal rock-like substance believed to be methamphetamine. (*Id.*) The later tested positive for methamphetamine. (*Id.*) A small clear plastic bag containing a substance which was believed to be marijuana and two partially smoked items also believed to be marijuana joints were found in the plaintiff's wallet. (Def.'s Mem. Supp. Summ. J. Mot. Ex. A - Logan's Aff. ¶ 4.) The plaintiff was arrested and charged with five misdemeanor charges and two felony drug charges for methamphetamines.[4] (*Id.*) These charges were later nolle processed.

---

[4]The misdemeanor charges were driving a car with faulty equipment, violation of South Carolina liquor laws, violation of a beginner's permit, possession of possible drug paraphernalia, and simple possession marijuana. (Def.'s Mem. Supp. Summ. J. Mot. Ex. A - Logan's Aff. ¶ 4.) The felony charges were for possession of methamphetamine, 3rd offense, and possession of methamphetamine with intent to distribute. (*Id.*)

**APPLICABLE LAW**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of it existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all interferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific,

6

material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION

It is well-established that a civil rights plaintiff must allege the personal involvement of a defendant to state a claim under 42 U.S.C. § 1983. *Monell v. Dept. of Social Svs.*, 436 U.S. 658, 691-92 (1978). A local governmental entity cannot be held vicariously liable for the unconstitutional acts of its employees and is only liable under § 1983 if it causes a deprivation of constitutional rights through an official policy or custom. *Id*. 436 U.S. 690-91. The plaintiff has not made any specific allegations as to the City of Anderson and he has not alleged any official policy or custom caused him a constitutional deprivation. Further, the plaintiff has not alleged any facts which would support liability for the City of Anderson as an employer or supervisor. *Slakan v. Porter*, 737 F.2d 368 (4th Cir.1984)(holding employer or supervisor may be held liable only if the plaintiff can show that the employer or supervisor had actual knowledge of the specific danger and was deliberately indifferent to the plaintiff's needs despite knowledge of this danger.) Accordingly, the City of Anderson should be granted summary judgment.

The plaintiff alleges that his Fourth Amendment rights were violated when he was arrested on September 4 and October 3, 2005. (See generally Pl.'s Pre-Trial Brief.) The defendant Officer Logan contends that he should be granted summary judgment for several reasons, including that the plaintiff has failed to state a claim. The court agrees.

The Fourth Circuit Court of Appeals has held that there is no independent cause of action for a § 1983 malicious prosecution claim, separate and distinct from a plaintiff's constitutional claims. *Brooks v. City of Winston-Salem*, 85 F.3d 178 (4th Cir. 1996)(holding allegations that an arrest made pursuant to a warrant not supported by probable cause states Fourth Amendment claim analogous to malicious prosecution). Rather, such a claim must be founded on a Fourth Amendment seizure. *Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000).

"The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir.1996). Allegations that law enforcement officers seized the plaintiff "pursuant to legal process that was not supported by probable cause and that the criminal proceedings terminated in his favor are sufficient to state a . . . claim alleging a seizure that was violative of the Fourth Amendment." *Id*. at 183-84. Accordingly, the plaintiff must show that his arrest was without probable cause and the state criminal proceedings terminated in his favor. There is no dispute that the state criminal proceedings ended in the plaintiff's favor. Therefore, the issue is whether the officers had probable cause to arrest the plaintiff.

8

To determinate whether or not probable cause existed, the court must examine the "totality of the circumstances" known to the officers at the time of arrest. *United States v. Al-Talib*, 55 F.3d 923,931 (4th Cir. 1995). Allegations that an arrest violates state law does not state a claim unless there was no probable cause for the arrest. *Fisher v. Washington Metro. Area Transit Auth.*, 690 F.2d 1133, 1139 (4th Cir. 1982). Probable cause for a warrantless arrest is defined as "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). Further, not everyone who is arrested but not convicted has a cause of action for violation of § 1983. The Constitution does not guarantee that only the guilty will be arrested. *Baker v. McCollan*, 443 U.S. 137, 145 (1979). "Probable cause requires more than mere suspicion of wrongdoing, but requires much less evidence than needed to convict." *Walker v. Scott*, 2006 WL 1288315, at *6 (W.D.Va. May 4, 2006). Thus, "[t]he proper inquiry in a section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988).

Further, even if it is determined that the plaintiff was innocent, which has not been shown in this case, only that the state declined to prosecute, the question is not whether there was actually probable cause for the arrest, but whether an objective officer could reasonably have believed probable cause existed. *Gomez v. Atkins*, 296 F.3d 253,

261-262 (4th Cir. 2002).  Claims for false arrest focus on the validity of the arrest, not on the validity of each individual charge made during the course of the arrest. *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir.1995).  If probable cause existed for any of the charges made, or if a reasonable police officer could believe probable cause existed, the false arrest claim fails. *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002).

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). In *Whren*, the United States Supreme Court held that police officers can temporarily detain a motorist when they have probable cause to believe the motorist violated a traffic ordinance, even if the police have some other motivation to stop the motorist. *Id*.  As long as the officer has a reasonable suspicion that even a minor traffic offense has occurred or is occurring, the stop of the vehicle is constitutionally permissible. *United States v. Hassan El*, 5 F.3d 726, 730 (4th Cir. 1993).  Likewise, "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (citations omitted).  Finally, in *Graham v. Connor*, 490 U.S. 386 (1989)(citations omitted), the Supreme Court held that the reasonableness of police action implicating the Fourth Amendment "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."

Here, viewed from the objective perspective of a reasonable officer on the scenes, such an officer would believe that probable cause existed to effectuate the arrest of plaintiff

on both September 4th and October 3rd, 2005. On September 4, 2005, Officer Logan clearly had reasonable suspicion based upon articulable facts to stop the plaintiff. Officer Logan first stopped the plaintiff after he observed the plaintiff hurrying out of the crowded parking lot of BreakTime club. Officer Logan had just arrived and heard squealing tires and an employee of the bar advised Officer Logan that an altercation had just occurred. Several people and vehicles were in the parking lot and the plaintiff was attempting to leave the parking lot quickly. After briefly speaking with the plaintiff, Officer Logan allowed him to leave without issuing any citations. Immediately following this, a dispatcher informed Officer Logan that the tags on the Jeep were registered to another car and Officer Logan initiated a second stop of the plaintiff. It was clearly reasonable for Officer Logan to stop the plaintiff a second time after Officer Logan had been informed by dispatch that the tag number on the car being driven by the plaintiff belonged to another car.[5]

There was also probable cause for the plaintiff's arrest on October 3, 2005. Officers Parks and Logan were leaving a parking lot and Officer Parks motioned for the plaintiff to drive in front of him. The plaintiff, however, knowing he was driving illegally with only a permit and no licensed driver with him, made a u-turn and parked his car. Officer Parks initiated the traffic stop of the plaintiff because the plaintiff was driving a car with a broken tail light. (Def.'s Mem. Supp. Sum. J. Mot. - Logan's Aff. at ¶ 3 and Ex. 2.) Officer Logan

---

[5]The plaintiff argues this was one stop and that during the stop, Officer Logan allowed him to drive ½ mile and then further detained him. (Pl.'s Pre-Trial Brief at 1.) Clearly, there were two stops - the first in the parking lot after which Officer Logan allowed the plaintiff to leave and a second stop after Officer Logan learned the tags did not belong to the Jeep.

pulled in behind to assist. Further, while the officers were standing by the plaintiff's car, they observed an open bottle of tequila in the passenger compartment. (Logan's Aff. ¶ 4 and Ex. 2.) The officers then learned that the plaintiff had only a beginner's permit and his passenger's driver's license was under suspension. (*Id.*) The officers searched the plaintiff for weapons and discovered a glass pipe commonly used for smoking controlled substances in his pocket and a small clear plastic bag in his wallet containing marijuana and two partially smoked marijuana joints. (*Id.*) Inside the passenger side of the car, the officers found a cigarette pack containing what appeared to be a marijuana joint and seven clear plastic bags packed with methamphetamines. (Logan's Aff. Ex. A.) Clearly, Officer Logan had probable cause to initiate the stop because of the broken tail light and arrest the plaintiff based upon the subsequent discovery of the drugs and drug paraphernalia.

The plaintiff argues that the charges were nolle prossed because there was a lack of probable cause. However, other than the plaintiff's own conclusory statements, all of the evidence shows the charges were nolle prossed because Officer Logan was no longer employed with the City of Anderson Police Department. The Municipal Court Coordinator, the Municipal Court Judge, the City Prosecutor, and the Assistant Solicitor all stated in affidavits that the charges in this case were nolle prossed due to the unavailability of the arresting officer, not due to a lack of probable cause. (Def.'s Mem. Supp. Summ. J. Mot . Ex. B - City Prosecutor's Aff.;  Ex. C. - Municipal Court Judge's Aff.; Ex. D. - Assistant Solicitor's Aff.; and Ex. E - Municipal Court Coordinator's Aff.)   In any event, the fact that

12

the plaintiff was not convicted does not mean that the defendant Officer Logan did not have probable cause to arrest him. *Baker v. McCollan*, 443 U.S. 137.

The plaintiff also argues that Officer Logan could not cite him for a broken taillight which was still working although broken and taped. He further alleges he never drove the car on a roadway; he drove it only in a parking lot. (Pl.'s Mem. Opp. Summ. J. Mot. Ex. A -Pl.'s Aff. at 4.) For the broken taillight, the plaintiff was arrested pursuant to S. C. Code Ann. § 56-5-5310 which provides:

> No person shall drive or move on any highway any vehicle unless the equipment thereon is in good working order and adjustment as required in this chapter and the vehicle is in such safe mechanical condition as not to endanger the driver or other occupant or any person upon the highway.

Even if the defendant here lacked probable cause to stop the plaintiff for the traffic violation, which the undersigned finds unnecessary to decide, Officer Logan certainly had probable cause to arrest the plaintiff upon discovery of the drugs and drug paraphernalia. "The lack of probable cause to stop and search does not vitiate the probable cause to arrest, because (among other reasons) the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant." *Townes v. City of New York*, 176 F.3d 138, 149 (2nd Cir. 1999). *See also Hector v. Watt*, 235 F.3d 154 (3rd Cir. 2000).[6] As there was clearly

---

[6]The court notes that although the plaintiff makes references to an illegal search, he has not specifically alleged a claim regarding an illegal search based upon the officers failure to articulate a reason to perform a pat down following a traffic stop. "Because of the hazards involved in a roadside encounter with a suspect, a law enforcement officer may conduct a protective search aimed at uncovering concealed weapons after making a proper traffic stop if the officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer

13

probable cause for the arrest, the defendant Officer Logan should be granted summary judgment.

**Qualified Immunity**

Having found that the plaintiff has not raised a viable § 1983 claim, the court need not determine whether any rights the plaintiff has asserted were "clearly established" for purposes of qualified immunity. *See DiMeglio v. Haines*, 45 F.3d 790, 799 (4th Cir.1995) ("In many cases where a defendant has asserted qualified immunity, dismissal or even an award of summary judgment may be obviously warranted, based upon existing law, without the court ever ruling on the qualified immunity question."); *Gordon v. Kidd*, 971 F.2d 1087, 1093 (4th Cir.1992) ("In analyzing the appeal of a denial of summary judgment on qualified immunity grounds, it is necessary first to identify the specific constitutional right allegedly violated, then to inquire whether at the time of the alleged violation it was clearly established.").

---

in believing that the suspect is dangerous." *United States v. Baker*, 78 F.3d 135 (4th Cir. 1996)(internal citations and quotation marks omitted). *See also Ybarra v. Illinois*, 444 U.S. 85, 93-94  (1979) (holding that *Terry v. Ohio*, 392 U.S. 1 (1968), does not permit a frisk for weapons on less than reasonable suspicion directed at the person to be frisked).

In any event, a plaintiff may not recover for injuries flowing "from the discovery of incriminating evidence and [the] consequent criminal prosecution," but only those "directly related to the invasion of their privacy," including "where appropriate" damages for physical injury, property damage, or injury to their reputation.  *Townes,* 176 F3d at 148.  Having reviewed the pleadings and the entire record, no such injuries have been claimed by the plaintiff.  Further, such injuries are actionable only "where appropriate," and it would not be appropriate here. There is no evidence, nor can it be reasonably inferred, that any damages resulted from the pat down itself. To the contrary, any damage to the plaintiff's reputation must have related to what was found, namely drugs. Accordingly, the plaintiff has not pled or proven any actionable injury based on any alleged unlawful search.

**State Law Claims**

To the extent that the plaintiff states additional claims under state law, the court should decline to exercise supplemental jurisdiction over the claims as it is recommended that summary judgment be granted on the plaintiff's federal claims as set for above. *See* 28 U.S.C. § 1367(c).

## CONCLUSION

Wherefore, based on the foregoing, it is RECOMMENDED that the Defendants' Motion for Summary Judgment (# 24) be GRANTED and the Plaintiff's complaint be DISMISSED with prejudice.

FURTHER, IT IS RECOMMENDED that the Plaintiff's Motion to Amend (#28) be DENIED.

IT IS SO RECOMMENDED.

                                            s/Bruce Howe Hendricks
                                            United States Magistrate Judge

February 5, 2008
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 10768
> Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).